**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MERIDITH KIRKPATRICK; SUSAN
KIRKPATRICK,
Plaintiffs-Appellants,

v.

LENOIR COUNTY BOARD OF
EDUCATION; DOUG JAMES, Doctor,
Superintendent of the Lenoir
County Schools, in his official
                                  No. 99-1609
capacity; J. OLIVER SMITH, Chairman
of the Lenoir County Board of
Education, in his official capacity;
LARRY JENKINS, Director of
Exceptional Children's Program,
individually and in his official
capacity,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Terrence W. Boyle, Chief District Judge.
(CA-97-168-4-BO)

Argued: April 5, 2000

Decided: June 20, 2000

Before WIDENER and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Goodwin wrote the opinion, in
which Judge Widener and Judge Traxler joined.

**COUNSEL**

**ARGUED:** Stacey Bice Bawtinhimer, LAW OFFICE OF STACEY B. BAWTINHIMER, New Bern, North Carolina, for Appellants. Edwin Maurice Braswell, Jr., WALLACE, MORRIS & BARWICK, P.A., Kinston, North Carolina, for Appellees.

_____

**OPINION**

GOODWIN, District Judge:

This appeal presents the question of whether an action brought in federal district court pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., by a party aggrieved by a state administrative agency decision is an original civil action or an appeal. For the reasons stated herein, we find that such an action is an original civil action governed by the Federal Rules of Civil Procedure. Accordingly, we affirm the district court's decision.

I.

In July 1996, Susan Kirpatrick, on behalf of her daughter Meridith, filed a special education due process petition in North Carolina against the Lenoir County Board of Education ("Board") pursuant to the IDEA. She alleged that the Board violated Meridith's rights as a child with a disability by failing to provide her with a free appropriate public education as required by federal and state law. The petition sought the following: a free appropriate public education for Meridith through the development of an individualized education plan ("IEP"), reimbursement for the cost of three independent educational evaluations ("IEEs") performed by private specialists, and reimbursement for the cost of Meridith's private school tuition.

After a hearing, a Lenoir County administrative law judge ("the ALJ") agreed that Meridith was in need of specialized educational services and ordered the Board to develop an IEP for her. The ALJ, however, denied reimbursement for the IEEs and for the private school tuition. On appeal, the state review officer affirmed the ALJ's

2

order for development of an IEP and the ALJ's denial of private school tuition reimbursement. The state review officer, however, reversed the ALJ as to the IEEs and ordered the Board to reimburse the Kirkpatricks $3,388. In that order, the state review officer also notified both parties that "[a]ny party aggrieved by this decision may institute a civil action in State or Federal court as provided by 20 U.S.C. 1415 and G.S. 115C-116 [N.C.] within 30 days after receipt of this decision."

On September 24, 1997, the last day of the thirty-day period, the Kirkpatricks filed a complaint in the Eastern District of North Carolina against the Board and defendants Dr. Doug James, J. Oliver Smith, and Larry Jenkins, who are officers of the Board. The Kirkpatricks sought reimbursement of the private school tuition costs. The Board did not file an action within the thirty day period. Instead, after receiving the Kirkpatricks' complaint, the Board filed a document styled "Answer and Appeal." That pleading sought a judgment denying the Kirkpatricks reimbursement for the IEEs.

The Kirkpatricks moved to dismiss the action filed by the Board on the ground that it was merely an untimely appeal. [1] On February 4, 1998, the district court denied the motion, characterizing the Board's "Answer and Appeal" as a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure that relates back to the date upon which the Kirkpatricks filed the original claim. The district

_____

[1] The IDEA, like many other federal statutes, does not contain a specific statute of limitations. When Congress has not established a cause of action for a federal claim, federal courts may "borrow" one from an analogous state statute of limitations so long as it does not frustrate the purposes of the federal claim. See Del Costello v. International Bhd. of Teamsters, 462 U.S. 151, 158 (1983). The Kirkpatricks argue that under North Carolina law, a party must appeal a decision of the state review officer within thirty days of receipt of the decision. See N.C. Gen. Stat. § 115c-116(k) (1999) ("Any party aggrieved by the decision of the Review Officer may institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415."). The Board, however, argues that even if the court characterizes the action as an appeal, North Carolina's three year statute of limitations found at section 1-52(16) of the General Statutes of North Carolina is the appropriate limitations period.

3

court then considered the merits of the claim and counterclaim. The district court ordered the development of an IEP, but denied the Kirkpatricks reimbursement for the IEEs and private schooling costs. The Kirkpatricks now appeal the district court's decision to reach the merits of the Board's claim.

The Kirkpatricks argue that the district court erred when it characterized the Board's "Answer and Appeal" as a compulsory counterclaim filed pursuant to Rule 13(a) of the Federal Rules of Civil Procedure instead of characterizing it as an untimely appeal. The central issue on appeal is therefore whether an action filed in federal district court pursuant to the IDEA is an original civil action, for which a counterclaim would be permitted, or whether the action is more accurately characterized as an appeal, such that the other party would have to file an additional appeal within the prescribed period in order to preserve its claims. For the reasons discussed below, we conclude that actions filed in federal court pursuant to the IDEA are original civil actions.

II.

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); see Gadsby v. Grasmick, 109 F.3d 940, 942 (4th Cir. 1997). The IDEA requires all states receiving federal funds for education to provide to each child with a disability between the ages of three and twenty-one a free appropriate public education that is designed specifically to meet that child's needs. See 20 U.S.C. § 1412(a)(1)(A).

The IDEA provides very little by the way of substantive standards to determine whether a child is receiving a free appropriate public education. See Board of Educ. v. Rowley, 458 U.S. 176, 189 (1982). However, the statute provides specific procedural safeguards to the parents of a child with a disability. See generally 20 U.S.C. § 1415. Under the IDEA, parents who are dissatisfied with a school district's IEP may file a grievance. See id. § 1415(b)(6). Following the filing of a grievance, a state or local educational agency conducts a hearing

4

to evaluate the disabled student's IEP. See id. § 1415(f)(1). Section 1415(g), entitled "Appeal," states that following the hearing,

> any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency. Such agency shall conduct an impartial review of such decision. The officer conducting such review shall make an independent decision upon completion of such review.

Id. § 1415(g) (emphasis added).

A party that is unsatisfied with the state review officer's decision has further recourse in either federal or state court. See id. § 1415(i)(2)(A). The Kirkpatricks, dissatisfied with the state review officer's decision, sought such recourse by initiating this action in the district court.

A.

In determining whether the Kirkpatricks' action pursuant to § 1415(i)(2)(A) was an "original action" or an "appeal," we must first look to the language of the statute. See United States v. Sheek, 990 F.2d 150, 152-53 (4th Cir. 1993) ("Statutory construction must begin with the language of the statute and the court should not look beyond that language unless there is ambiguity or unless the statute as literally read would contravene the unambiguously expressed legislative intent gleaned from the statute's legislative history."). Section 1415(i)(2)(A) states:

> Any party aggrieved by the findings and decision[of the local or state administrative agency], shall have the right to bring a civil action with respect to the complaint presented pursuant to [section 1415], which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A)(emphasis added).

5

Thus, as an initial matter, the statute makes specific reference to a "civil action," not an "appeal." The drafters clearly knew the distinction between a civil action and an appeal. While the statute explicitly affords an aggrieved party a right to appeal from the local educational agency to a state review officer, see id.§ 1415(g), it explicitly gives an aggrieved party who has exhausted his administrative remedies the right to "bring a civil action" in federal or state court. Id. § 1415(i)(2)A). This distinction appears to have been deliberate. When the House of Representatives first passed the predecessor statute to the IDEA, the language provided for appeals to be taken from both the initial local agency and the state review officer's decision. That language was dropped, however, and replaced with the present statutory language, which grants the aggrieved party the right to "bring a civil action" following the state review officer's decision. See U.S. Code Cong. & Admin. News 1480, 1501, 1503 (1975); see also Tokarick v. Forest Hills Sch. Dist., 665 F.2d 443, 448 (3d Cir. 1981).

B.

Additionally, evidence received by a district court and the remedies available are more akin to an original civil action. From a procedural standpoint, courts hearing a case on appeal are limited to reviewing the record that has been developed below. Conversely, a district court hearing an action brought pursuant to 20 U.S.C.§ 1415(i)(2)(A) may consider evidence in addition to the record developed in the administrative proceeding. Section 1415(i)(2)(B) provides that in addition to considering such records, the court "shall hear additional evidence at the request of a party."[2]

_____

[2] The entire text of Section 1415(i)(2)(B) provides that:

> In any action brought under this paragraph, the court -
>
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

Id. § 1415(i)(2)(B).

In addition, while § 1415(i)(2)(B) instructs district courts to "receive the records of the administrative proceeding," district courts are not limited to the parameters of the remedies issued by the state administrative agency below. In fact, the statute explicitly authorizes district courts to exercise their discretion and "grant such relief as the court determines is appropriate." See 20 U.S.C. § 1415(i)(2)(B).

Thus, a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency. Instead, it offers its own independent de novo review and conclusion. If the district court fashions a different remedy, that remedy is imposed by the district court itself as an enforceable order.

C.

Despite the clear statutory language, the manner in which district courts evaluate the "records of the administrative proceedings" has led some courts to conclude that an action initiated pursuant to 20 U.S.C. § 1415(i)(2)(A) should be characterized as an "appeal" instead of as an "original civil action." In fact, at least one district court in this circuit has characterized IDEA claims as appeals and cross-appeals. See Fritschle v. Andes, 25 F. Supp. 2d 699, 702 (D. Md. 1998) (granting motion to dismiss purported counterclaim on statute of limitations grounds because it was "in reality an appeal of an adverse administrative agency decision").

The confusion has occurred because although courts are statutorily required to conduct an independent review of the administrative record, several courts, including this court, have adopted a judicial construct that is deferential to the state administrative agency. For example, this circuit requires courts to give deference to the findings of the administrative hearing officer and has held that "administrative findings in an IDEA case `are entitled to be considered prima facie correct.'" Hartmann v. Loudoun County Bd. of Educ., 118 F.3d 996, 1000-01 (4th Cir.), cert. denied, 522 U.S. 1046 (1998) (quoting Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991)).

The simple fact that a district court might assign greater weight to the state administrative findings is irrelevant for purposes of determining whether the court should characterize the action as an "ap-

7

peal" or as an "original civil action." **3** The judicially-imposed deferential standard of review is merely a recognition that state educational administrative agencies possess a level of expertise and familiarity with educational standards and medical information regarding disabilities. Although federal courts may defer to the state review officer's decision and thus give the proceedings an appellate attribute, the manner of review does not convert IDEA actions into appeals in the face of explicitly clear statutory language that they are original civil actions.**4**

D.

This conclusion is not inconsistent with court decisions that have

_____

**3** The bill originally passed by the House of Representatives contained a highly deferential standard of review provision stating that the federal district court must adopt the decision of the state administrative agency unless the decision was not supported by substantial evidence. See U.S. Code Cong. & Admin. News 1480, 1501, 1503 (1975). Before enactment, however, that language was changed to the proof by a preponderance of the evidence language now contained in the current statute. Id.
**4** Courts frequently use appellate-type language when deciding cases pursuant to 20 U.S.C. § 1415(i)(2)(A). For example, in this case, the district court's memorandum opinion reaching the merits of the dispute paradoxically states, "[t]his matter is before the Court on cross-appeals," whereas in the earlier order denying the motion to dismiss, the district court described the Board's "Answer and Appeal" as a responsive pleading that asserted a counterclaim. Because of the judicially-imposed deference and the quasi-appellate nature of IDEA actions, there appears to be confusion as to the exact nature of the IDEA proceedings before the district courts. Out of convenience and expediency, many courts use language suggesting that they are affirming or reversing the decision of the state administrative agency. Several courts also indicate that the matter is before the court on cross-appeals or cross-motions for summary judgment despite the fact that there are clearly disputed issues of material fact. As we conclude, IDEA actions are original civil actions that should typically be disposed of by motions for judgment. To the extent that federal courts have used terminology such as "review," "appeal," "upheld," or "vacated," that terminology is not appropriate in a strict legal sense. The lack of precision by courts, however, does not convert what are clearly original civil actions into impermissible cross-system appeals.

8

characterized IDEA actions as administrative appeals for the purpose of determining which statute of limitations should apply. Like many federal statutes, the IDEA does not prescribe a limitation period for the actions allowed pursuant to 20 U.S.C. § 1415(i)(2)(A). Consequently, federal courts must adhere to the "borrowing" doctrine, which requires a federal court to borrow from the state the most analogous state statute of limitation. See Del Costello v. International Bhd. of Teamsters, 462 U.S. 151, 158 (1983). Some courts have analogized IDEA actions to appeals from administrative agencies in adopting a short statute of limitations period. See, e.g., Livingston Sch. Dist. Nos. 4 and 1 v. Keenan, 82 F.3d 912, 916 (9th Cir. 1996) (applying Montana's thirty day statute of limitations applicable to judicial review of administrative appeals); Dell v. Board of Educ., 32 F.3d 1053, 1060 (7th Cir. 1994) (applying 120 day statute of limitations for judicial review of administrative decisions); Amann v. Town of Stow, 991 F.2d 929, 932 (1st Cir. 1993) (applying limitations period that governed civil actions seeking judicial review of state agency decisions); Spiegler v. District of Columbia, 866 F.2d 461, 465-66 (D.C. Cir. 1989) (applying limitations period for petitions for review of agency action). But see Schimmel by Schimmel v. Spillane, 819 F.2d 477, 482-83 (4th Cir. 1987) (applying Virginia's one year statute of limitations for personal actions for which no limitations period is prescribed instead of thirty day limitations for appealing from decision of state agency).

Although we need not determine the appropriate statute of limitations in this case for reasons discussed below, the court notes that there is nothing inconsistent in holding that a§ 1415(i)(2)(A) action is an original civil action yet borrowing the state statute of limitations applicable to judicial review of administrative agency actions.**5** In such a case, the statute of limitations governs when the action must

_____

**5** To the extent the Kirkpatricks suggest that, for any claim filed under 20 U.S.C. § 1415 challenging the decision of a North Carolina review officer, the appropriate limitations period is thirty days, see N.C. Gen. Stat. § 115c-116(k), their argument is, in all likelihood, foreclosed by circuit precedent. In Schimmel, we refused to apply a thirty-day limitations period to an action filed in federal court under 20 U.S.C. § 1415 on the grounds that such a short limitations period would undermine various federal policies behind the Act. See Schimmel , 819 F.2d at 482-83.

9

be filed. The Federal Rules of Civil Procedure, however, govern the proceedings before the district court.

E.

Finally, and perhaps most importantly, our system of federalism dictates that courts characterize IDEA actions as original civil actions instead of as appeals. Our judiciary is separated into two distinct systems: a state court system and a federal court system. In <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), the Supreme Court established a fundamental principle that governs any discussion in this area. Lower federal courts lack jurisdiction to entertain appeals from state court judgments because that power is reserved exclusively to the United States Supreme Court. <u>Id.</u> at 416. Thus, cross-system appeals from state courts to federal courts are not contemplated by our system of federalism.

These principles also apply in the administrative realm. Although judicial review of administrative agency action is a fixture of our modern administrative state, generally federal courts review federal agencies and state courts review state agencies. In <u>Fairfax County Redevelopment & Housing Auth. v. W.M. Schlosser Co.</u> , 64 F.3d 155 (4th Cir. 1995), this court stated that "the district court is `a court of original jurisdiction,' not `an appellate tribunal,' and thus, is without jurisdiction `to review on appeal action taken administratively or judicially in a state proceeding.'" <u>Id.</u> at 158 (quoting <u>Chicago, Rock Island & Pac. R.R. v. Stude</u>, 346 U.S. 574, 581 (1954)); <u>see Shamrock Motors, Inc. v. Ford Motor Co.</u>, 120 F.3d 196, 200 (9th Cir. 1997) ("[t]he prospect of a federal court sitting as an appellate court over state administrative proceedings is rather jarring and should not be quickly embraced as a matter of policy."); <u>Armistead v. C&M Trans., Inc.</u>, 49 F.3d 43, 47 (1st Cir. 1995) ("As courts of original jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power."); <u>Hameetman v. City of Chicago</u>, 776 F.2d 636, 640 (7th Cir. 1985) ("Federal courts have no general appellate authority over state courts or state agencies.").**6**

_____
**6** The court recognizes that there is a debate surrounding the meaning of the United States Supreme Court case <u>City of Chicago v. International</u>

10

With these principles in mind, it is clear that an IDEA action filed in federal district court must be characterized as an original "civil action" instead of an "appeal." Congress's authorization of a federal court action after state administrative remedies have been exhausted does not represent a departure from the long-established principles of federalism. Rather, the procedural scheme established by the IDEA reveals Congress's intent to provide aggrieved persons with an <u>external</u> check on the state administrative action. As the Third Circuit in <u>Tokarick</u> stated,

> in providing for <u>independent</u> court review, Congress apparently intended to create an external check to guard against possible procedural deficiencies or institutional pressures inherent in the educational administrative system. Rather than affirming, reversing or remanding an agency decision, courts are required to decide upon an educational placement which conforms to their understanding of the aims and terms of the Education Act.

<u>Tokarick</u>, 665 F.2d at 451 (emphasis added).

Thus, while a federal district court may review a state review officer's decision and even defer to that decision, the federal district court does not sit as an appellate court. Federal district courts are courts of limited, original jurisdiction with no power to sit as appellate tribunals over state court or administrative proceedings. Federal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions.

_____

<u>College of Surgeons</u>, 522 U.S. 156 (1997), and whether that case authorizes cross-system appeals. <u>City of Chicago</u>, however, merely holds that district courts can exercise supplemental jurisdiction over state claims that call for deferential on-the-record review of state administrative findings when the district court already possesses original jurisdiction over another claim. That decision does not reach so far as to convert a civil action predicated on a comprehensive federal regime into an appeal from a state administrative agency simply because the court may conduct the civil action in a manner that contains appellate characteristics.

11

III.

Having concluded that an action filed in federal district court pursuant to the IDEA is an original civil action, we need not decide whether North Carolina's thirty day or three year statute of limitations applies in this case. Because it is an original civil action, the proceedings in an IDEA case are governed by the Federal Rules of Civil Procedure. Pursuant to the Federal Rules, civil actions are initiated by a complaint and responded to by an answer, counterclaim, or motion to dismiss.

Thus, the Board's response was an answer and compulsory counterclaim. Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure,[7] the Board's counterclaim was compulsory because it arises from the same administrative hearing and review officer's decision, involves the same child and school district, and evokes consideration of the same law. In this circuit a compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint. See Burlington Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir. 1982) (holding that "the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim").[8] Because the Kirkpatricks timely filed the IDEA action, the Board's counterclaim relates back to the date of the original filing. Therefore, the counterclaim was timely regardless of whether the statute of limitations governing this matter was thirty days or three years.

_____

[7] Rule 13(a) of the Federal Rules of Civil Procedure states:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

[8] In North Carolina, compulsory counterclaims also relate back to the time of the filing of the original complaint. See In Re Gardner, 202 S.E.2d 318, 323-24 (N.C. Ct. App. 1974) (citing Brumble v. Brown, 71 N.C. 513 (1874)).

IV.

For the reasons given, we affirm the judgment of the district court.

<u>AFFIRMED</u>

13